UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARGONAUT INSURANCE
COMPANY,

       Plaintiff,

v.

CITY OF ANN ARBOR

       Defendant.
_____/

Case No. 2:25-cv-10942

Hon. Brandy R. McMillion
United States District Judge

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF NO. 15)

Plaintiff Argonaut Insurance Company ("Argonaut") brought this declaratory judgment action seeking to determine if policy coverage is owed to the City of Ann Arbor ("Ann Arbor") relating to a concurrent action pending before the Michigan Court of Appeals between Ann Arbor and Platt Convenience, Inc. ("Platt"). *See generally* ECF No. 1. Ann Arbor now moves to dismiss this action pursuant to Federal Rule 12(b)(1), arguing inadequate subject matter jurisdiction, resting on an unresolved factual question central to the underlying litigation. *See* ECF No. 15. This Motion has been adequately briefed, so the Court finds oral argument unnecessary and can rule on the record before it. *See* ECF Nos. 17, 18; E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, Ann Arbor's Motion is **GRANTED**.

1

I.

This Motion originates from a concurrent action before the Michigan Court of Appeals over the constitutionality of stormwater fees charged by Ann Arbor (the "Underlying Lawsuit").[1] ECF No. 1, PageID.3; ECF No. 17, PageID.341. Platt has sued Ann Arbor, alleging the city—without voter approval—began imposing a tax disguised as a stormwater fee in 1993, on all property owners, in violation of the "Headlee Amendment." *See* MICH. CONST. art. IX § 31; ECF No. 1, PageID.3.; ECF No. 15, Page ID.255. As a result, Platt maintains Ann Arbor's actions violated the Michigan Supreme Court's 1998 *Bolt* decision, which "[created] a precedent that stormwater fees imposed were an unlawful tax that violated the Headlee Amendment." ECF No. 1, PageID.10 (citing *Bolt v. City of Lansing*, 587 N.W.2d 264 (Mich. 1998)). Both the Michigan Court of Appeals and the Michigan Supreme Court have addressed these claims. *See Platt Convenience, Inc. v. City of Ann Arbor*, ---N.W.3d----, No. 359013, 2024 WL 4428139 (Mich. Ct. App. Oct. 4, 2024) (granting Ann Arbor's Motion for Summary Disposition), *appeal denied*, 25 N.W.3d 320 (Mem) (Mich. 2025) (unpersuaded "that the questions presented should be reviewed by this Court.").

---

[1] *Platt Convenience Inc. v. City of Ann Arbor*, Michigan Court of Appeals, Civil Action No. 359013.

Now comes Argonaut. From March 1, 2014, to March 1, 2015, Argonaut insured the City of Ann Arbor. ECF No. 1, PageID.5. The insurance coverage included several risk areas such as "General Liability," "Public Officials Liability," "Employment Practices Liability," "Law Enforcement Liability," and "Auto Liability" (hereinafter "the Policy"). ECF No. 1, PageID.5; ECF No. 15, PageID.256. While in the crossfire of the Underlying Lawsuit, Argonaut proceeded to file this action against Ann Arbor pursuant to the Declaratory Judgment Act, 28 U.S.C.§ 2201, requesting a declaration that it owes no duty to defend or indemnify Ann Arbor in the stormwater fee litigation. *See generally* ECF No.1.

Argonaut argues the Policy included exclusions that preempt Ann Arbor's potential coverage for any damages or costs related to or arising from the Underlying Lawsuit. ECF No. 1, PageID.10; ECF No. 15, PageID.257. Argonaut claims that before the parties' entered into the insurance agreement, Ann Arbor knew that the "imposed Stormwater Fees were in violation of the Headlee Amendment." ECF No.1, PageID.42. Consequently, Argonaut argues that it is "entitled to declaratory judgment that Ann Arbor is not covered under the Policy for damages related to the imposed Stormwater Fees, any related claims, and the Underlying Lawsuit because the claims do not fall within any coverage provided by the Policy." ECF No. 1, PageID.11.

3

This Motion followed and has been adequately briefed such that oral argument is unnecessary; thus, the Court will rule based on the record before it. *See* ECF Nos. 15, 17, 18; E.D. Mich. L.R. 7.1(f)(2).

## II.

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject-matter jurisdiction. Rule 12(b)(1) motion[s] generally come in two varieties: a facial attack or a factual attack. *See Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A court evaluating a facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *See id.* But a factual attack "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject matter does or does not exist.'" *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017).

With a declaratory judgment, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(A); *see also* Fed. R. Civ. P. 57. The statute grants Courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *See Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 796 (6th Cir. 2022) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). But the Declaratory Judgment Act remains "an

enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.*

### III.

The question before the Court is whether it would be proper to exercise jurisdiction to issue a declaration in this case. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, district courts are provided discretionary jurisdiction to determine the appropriateness of a request for declaratory relief independent of threshold subject-matter jurisdiction requirements. *Blaszczyk v. Darby,* 425 F. Supp. 3d 841, 856 (E.D. Mich. 2019) (citing *Wilton,* 515 U.S. at 282). The Sixth Circuit has implemented the following five factor test to assess the appropriateness of exercising federal jurisdiction in declaratory actions. The factors include:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata."
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*See Cardinal Health*, 29 F.4th at 796-97 (citing *Grand Trunk W. R.R. Co. v. Consl. Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984)). Neither factor is assigned weights when considered, nor are the factors always considered equally. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). Rather, the Court must take "a good look at the issue and engage in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* The Court will address each factor in turn.

A. **Settlement and Useful Purpose**

The first two factors require the Court to consider "whether the declaratory action would settle the controversy" and "whether it would serve a useful purpose in clarifying the legal relations in issue." *Cardinal Health*, 29 F.4th at 796-97. Upon reviewing the parties' submissions, the briefing reflects the recognized split in Sixth Circuit precedent regarding the proper scope of these factors, specifically whether a declaratory judgment must resolve the entire underlying controversy or whether it is sufficient that the judgment resolve only the insurance-coverage dispute presently before the Court. *Banks Engineering, Inc. v. Nationwide Mutual Insurance Co.,* 2021 WL 2382520, at *4 (E.D. Ky. June 10, 2021), *aff'd*, No. 21-5652, 2022 WL 203332 (6th Cir. Jan. 24, 2022).

The court in *Banks* elaborated on the key distinction between these categories, emphasizing that the determinative question is whether the case involves unresolved issues of fact that would dictate whether a broad or narrow scope of review is

6

appropriate. *Id.* at *4. To illustrate this distinction, the court provided examples demonstrating how the scope of declaratory relief varies depending on the specific facts of each case, examples that both parties relied upon to support their respective positions. In *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004), the court relied on the broader definition of 'resolving the controversy' when the insurance coverage dispute turned on a fact-based question of state law (*i.e.*, whether the underlying plaintiff was an employee or independent contractor) that was already being considered in two independent state court proceedings. *Id.* at *4. Whereas in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008), a narrow review was applied. "*Flowers* involved a purely legal dispute—namely, the scope of the insurance policy. Accordingly, the action did not require the district court to inquire into matters being developed in state court." *Id.* at *4.

Argonaut relies on the *Flowers* line of cases, which permits a narrower inquiry focused solely on the insurer–insured relationship. It contends that issuing a declaratory judgment would resolve the dispute regarding the scope of the Policy's coverage and its obligations to defend and indemnify Ann Arbor in the Underlying Lawsuit. According to Argonaut, because the coverage questions turn on interpreting contract language rather than resolving the merits of the underlying state claims, a federal declaration would sufficiently clarify the legal relations at issue. ECF No. 15, PageID.6-7.

In contrast, Ann Arbor relies on the *Bituminous* line of cases, which emphasize a broader inquiry into the entire controversy and caution against issuing declaratory relief where the underlying state action involves unresolved factual questions bearing directly on coverage. "Nothing about it [the issuance of a DJ] will help determine whether Ann Arbor's stormwater utility charges are valid user fees or illegal taxes under the Michigan Constitution's Headlee Amendment." ECF No. 15, PageID.12. And therefore, according to Ann Arbor, the applicability of the Policy's exclusions turns on factual determinations, such as the nature and cause of the alleged conduct, that the state court is already addressing.

"The Sixth Circuit has long recognized that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." ECF No. 15, PageID.261 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul fire & Marine Ins. Co.,* 791 F.2d 460, 463 (6th Cir. 1986)). Under this approach, a federal declaration could lead to inconsistent findings, would not bind the underlying plaintiffs because they were not named as defendants in this suit, and may interfere with the state court's ability to fully resolve the dispute over a question of state constitutional law. ECF No. 15, PageID.261-262.

In this case, a broad approach is appropriate. To exercise jurisdiction, the Court "would be required to interpret the parties' insurance contract independent of

8

issues implicated in the underlying state-court litigation." *Banks Eng'g,* 2021 WL 2382520, at *4. The Court cannot determine the parties' rights or settle their legal relations without factual findings from the underlying matter, including, as Defendant notes, whether the City's alleged actions violate the Headlee Act. ECF No. 15, PageID.12. The dispute in the underlying action arises solely under Michigan law and remains unsettled. Additionally, none of the plaintiffs in the state-court case have been named in this suit and, therefore, are not bound by any determination issued here.

While a declaratory judgment would undoubtedly resolve certain questions regarding the scope of coverage, indemnification, and would clarify the legal relationship between the parties with respect to defense and indemnity obligations, that alone does not weigh in favor of exercising jurisdiction under the Declaratory Judgment Act. *See Banks Eng'g,* 2021 WL 2382520, at *4. Critically, the absence of the underlying plaintiffs means that any declaration issued by this Court could not fully and finally resolve the controversy. *See Bituminous*, 373 F.3d at 814; *Travelers*, 495 F.3d at 272. Moreover, issuing a declaration would require the Court to decide unsettled questions of state constitutional law before the state courts have had the opportunity to address them. *Stratesphere LLC v. Kognetics Inc.,* No. 2:20-CV-2972, 2023 WL 3852723, at *3 (S.D. Ohio May 5, 2023). Given that the underlying matter remains on appeal, assuming jurisdiction here would not promote

9

an efficient use of judicial resources. Thus, the first two factors weigh in favor of dismissal.

**B.     Procedural Fencing**

The third factor requires the Court to consider whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata." *See Cardinal Health*, 29 F.4th at 796-97. This factor is intended to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (citing *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004)). Both parties acknowledge that this factor is not in dispute, and the Court does not perceive any improper motive on the part of the defendants in filing this action. Accordingly, this factor could be considered to weigh in favor of exercising jurisdiction, but the Court considers it neutral because it really has no bearing on the ultimate outcome of the Court's decision.

**C.     Jurisdictional Friction**

The fourth factor considers whether exercising jurisdiction could heighten friction between federal and state courts. *See Cardinal Health*, 29 F.4th at 796-97. The Sixth Circuit considers the following three additional subfactors to determine

whether issuing a declaration would increase friction between federal and state courts:

> (1) whether the underlying factual issues are important to informed resolution of the declaratory judgment case,
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Travelers Indem. Co. v. Bowling Green Prof. Associates, PLC,* 495 F.3d 266, 271 (6th Cir. 2007) (citing *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967 (6th Cir. 2000)). The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560.

Here, Argonaut asserts that "resolution of this action does not depend on facts or judgments developed in the underlying lawsuit" and that the issues presented here "will not be litigated in the underlying lawsuit." ECF No. 17, PageID.352. Argonaut further notes that Michigan's established body of contract law is routinely applied by federal courts when interpreting the scope of an insurance policy. *Id.* Relying on this principle, Argonaut argues that no underlying factual issues are material to the resolution of this declaratory judgment action because, under Michigan law, "the construction and interpretation of an insurance contract is a question of law for the

11

court to determine," leaving no factual dispute for this Court to resolve.  ECF No. 17, PageID.354–355.

By contrast, Ann Arbor argues that Argonaut's complaint raises factual issues that should be reserved for the state because the Underlying Lawsuit arises under the Michigan Constitution and "present[s] no less than four novel questions of Michigan law."  ECF No. 15, PageID.264.  Moreover, the factual issues in the Underlying Lawsuit center on whether any conduct attributed to Ann Arbor violates the Headlee Act or constitutes conduct that would trigger an exemption in the Policy, which in turn bears directly on whether the Argonaut owes a duty to defend or indemnify.  ECF No. 18, PageID.386.

As previously discussed in addressing factors one and two, declaratory judgment actions present either issues of law or fact.  *Banks Eng'g,* 2021 WL 2382520, at *4.  This Court finds that Argonaut seeks a declaration on issues that necessitate an examination of factual disputes that "require making factual findings that might conflict with similar findings made by the state court." *Flowers*, 513 F.3d at 560.  Argonaut asserts that because its declaration relates to the scope of an insurance contract, it constitutes a question of law.  ECF No. 17, PageID.354–355.  Supporting the Court's point, Argonaut included direction on how a declaratory judgment is resolved.  "When a federal court is tasked with resolving the scope of an insurance policy contract's coverage in a declaratory judgment, it applies the state

12

contract laws to interpret the policy contract based on the claims alleged in the underlying lawsuit." ECF No. 17, PageID.354.

This exposes a contradiction in Plaintiff's argument. For the Court to apply Michigan contract law to the Policy and the Underlying Lawsuit's claims, it must determine whether the Stormwater Fees constitute a tax and whether Ann Arbor's alleged conduct alone qualifies as an exclusion under the Policy. Those are the very questions presently before the state court, and they remain unresolved. On the other hand, if this Court attempted to interpret the Policy while deferring to the state court's pending determinations, the resulting declaration would provide no meaningful clarity. Because the underlying plaintiffs in the state are absent from this action, and because the state court has not yet decided whether Ann Arbor's conduct triggers or precludes coverage, any declaration issued here would merely restate the Policy without conclusively resolving the parties' rights or obligations. If the Court were to resolve these factual questions in the first instance, it would risk intruding upon and potentially restricting the state court's ability to adjudicate the underlying dispute. Regardless of the constitutional aspect of the Underlying Lawsuit, the Sixth Circuit has consistently warned that it is inappropriate for a federal court to exercise jurisdiction when it must resolve factual issues essential to the state case. *See Flowers*, 513 F.3d at 560.

The second sub-factor considers whether the federal or state court is better suited to resolve the issues presented in the declaratory judgment. *Travelers Indem. Co.*, 495 F.3d at 271. "The Sixth Circuit has recognized that 'states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" *Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 879 (E.D. Ky. 2016) (citing *Flowers*, 513 F.3d at 561). Under the applicable Sixth Circuit standard, Michigan state courts are the more appropriate forum for interpreting an insurance contract where, as here, unresolved factual issues in the Underlying Lawsuit bear directly on indemnity and the duty to defend. Moreover, "state courts are generally better suited to resolve novel questions of state law." *Flowers*, 513 F.3d at 560. Here, this is especially true given that the Underlying Lawsuit arose under the Michigan Constitution, specifically the Headlee Amendment, which further underscores the state courts' primary role in resolving novel or unsettled questions of Michigan constitutional law. Because the remaining coverage questions depend on factual determinations and unsettled issues of Michigan constitutional and contract law currently before the state courts, this sub-factor weighs in favor of dismissal.

The third sub-factor considers whether there is a strong connection between the issues in this action and state law or public policy, such that the matter is more

appropriately resolved in state court. *Travelers Indem. Co.* 495 F.3d at 271. As explained above, Michigan courts are better suited to address issues involving the interpretation of state-regulated insurance contracts. *Auto-Owners Ins. Co.,* 152 F. Supp. 3d at 879. Additionally, the questions that must be resolved to issue a declaratory judgment here involve novel and unsettled issues of Michigan law, including matters arising under the Michigan Constitution, which underscores the strong and exclusive bond between the claims and state law. These questions have no federal nexus other than diversity jurisdiction and the procedural avenue provided by the DJA, reinforcing that state courts are the proper forum for their resolution. Indeed, this case "implicates such fundamental state policies that federal courts are unfit to consider them." *Banks Eng'g,* 2021 WL 2382520, at *6 (citing *Flowers,* 513 F.3d at 561). Accordingly, this sub-factor also weighs in favor of dismissal.

**D.    Alternative Remedy**

The final factor examines whether an alternative remedy exists that is better or more effective than resolving the dispute through a federal declaratory judgment. *Grand Trunk,* 746 F.2d at 326. "For example, courts may consider whether the plaintiff may seek a declaratory judgment in state court or file an indemnity action." *Banks Eng'g,* 2021 WL 2382520, at *6 (citing *Johnston v. Chubb Grp. of Ins. Co.*, No. 4:20-cv-00049, 2020 WL 4803288, at *5 (W.D. Ky. Aug. 18, 2020)). This factor also weights against this Court exercising jurisdiction for several reasons.

First, Michigan expressly permits insurers to seek declaratory relief in state court. *See* Mich. Ct. R. 2.605; *see also Rose v. State Farm Mut. Auto. Ins. Co.*, 732 N.W.2d 160, 162 (Mich. Ct. App. 2006); *Hartford Cas. Ins. Co. v. TRE Servs., Inc.*, No. 2:09-cv-14634, 2011 WL 124496, at *6 (E.D. Mich. Jan. 14, 2011). Second, as previously stated, Michigan state courts are just as capable as the federal courts in interpreting an insurance provision; and proceeding in state court would in fact further Argonaut's aims for a determination regarding coverage, indemnity, or defense obligations that binds all interested parties. ECF No. 15, PageID.262 n.1; *see also Bituminous*, 373 F.3d at 814; *Travelers*, 495 F.3d at 272. Further, as discussed, the state court should be given deference when resolving questions of state constitutional dimension. *Auto-Owners Ins. Co.,* 152 F. Supp. 3d at 879. The factual and legal issues relevant to coverage relate to the constitutionality of the stormwater charges which is an issue already before the state courts.

Accordingly, the existence of a more complete and effective state-court remedy weighs against this Court exercising jurisdiction.

**IV.**

Michigan state courts have already invested substantial judicial resources in addressing this matter and allowing them to proceed without federal interference promotes comity, avoids duplicative litigation, and reduces the risk of inconsistent outcomes.

Accordingly, this Court declines to exercise jurisdiction under the Declaratory Judgment Act. Therefore, Ann Arbor's Motion to Dismiss (ECF No. 15) is **GRANTED**.

**IT IS HEREBY ORDERED** that the Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

*This is a final order that closes the case.*

**IT IS SO ORDERED.**

Dated:  December 31, 2025         s/Brandy R. McMillion
       Detroit, Michigan              HON. BRANDY R. MCMILLION
                                                   United States District Judge